### Nos. 2988 and 2989

### Second Circuit

---

### MRS. CHILDERS v. FORD, BACON & DAVIS, INC.

### MR. CHILDERS v. FORD, BACON & DAVIS, INC.

### (Consolidated)

---

(May 13, 1927.  Opinion and Decree.)
(June 28, 1927.  Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Automobiles—Par. 4, 4b, 4d.**
The driver of an automobile who, in turning from a cross street at an excessive rate of speed, drives on the left-hand side of the street, colliding with another car, is guilty of gross negligence.

2. **Louisiana Digest—Automobiles—Par. 7.**
One who drives his car on the right-hand side of the street at a moderate rate of speed is not contributorily negligent in a collision with another car driven in the opposite direction at an excessive rate of speed on his left-hand side of the street.

3. **Louisiana Digest—Automobiles—Par. 9.**
A judgment of five thousand, five hundred and fifty-two dollars and seventy-three cents is adequate quantum of damages for expense for loss of time, medical and surgical fees, hospital bills, damage to automobile, pain, suffering, and temporary and permanent injuries consisting of contusions about the face and head, laceration of the right leg and contusions on the left knee, fracture of the malar bone, and an incomplete rupture of the bladder.

4. **Louisiana Digest—Automobiles—Par. 9.**
Three thousand dollars is adequate quantum of damages for laceration of lower lip, abrasion of the arm, contusion of the left knee, fracture of one rib, false teeth broken, and, as a result, stomach fallen down two and one-half inches below its normal position, making her totally disabled to do work of any character.
(See Civil Code, Art. 2315.—Editor's note.)

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. J. T. Shell, Judge.

Action by Mrs. Mary L. Childers against Ford, Bacon & Davis, Inc., and by Mr. Davis, against Ford, Bacon & Davis, Inc.

There was judgment for plaintiffs and defendant appealed.

Judgment affirmed.

Theus, Grisham & Davis, of Monroe, attorneys for plaintiff, appellee.

Shotwell & Brown, of Monroe, attorneys for defendant, appellant.

ODOM, J.  Plaintiffs are husband and wife and brought separate suits against defendant for damages resulting from personal injuries caused by a collision between an automobile occupied by plaintiffs and driven by John C. Childers and an automobile owned by defendant and driven by one of its employees. The two

suits were consolidated for the purpose of trial.

Plaintiffs allege that the collision between the two cars was caused by the fault, gross carelessness and negligence of the driver of defendant's car, and specify that he was driving at an excessive rate of speed of fifty miles per hour in violation of the municipal ordinance regulating the speed of automobiles in the city Monroe, and that when defendant's car reached a point a short distance ahead of plaintiff's, the two cars going in opposite directions, defendant's driver, without warning or signal, turned from his side of the street and ran across to the opposite side, running into plaintiff's car.

Defendant, in answer, denied negligence on the part of its employee, and alleged that plaintiffs—

"turned suddenly to the left without warning or notice and deliberately ran said automobile directly in front of the Dodge touring car belonging to defendant and made it impossible for the said Gus Brunson, driver of respondents, to get out of the way or avoid said collision; that said collision was due entirely to the gross and negligent manner in which the driver of the Ford car, plaintiff being the driver thereof, was driving."

Each of the parties, therefore, charge the other with identically the same fault and negligence, to-wit: suddenly and without warning turning to the left and leaving his side of the street when they met. Plaintiffs, however, in addition to this negligence, allege that defendant's driver was running at an excessive rate of speed.

On these issues the case was tried and there was judgment in favor of the plaintiff, John H. Childers, and against the defendant for $5552.73 with legal interest thereon from judicial demand, and judgment in favor of plaintiff, Mrs. Mary L. Childers, and against the defendant for $3000.00 with legal interest thereon from judicial demand.

The defendant appealed.

## OPINION.

The testimony shows conclusively that plaintiff, Childers, was guilty of no negligence in the operation of his car but, on the contrary, that Brunson, the driver of defendant's car, was not only driving his car at an excessive rate of speed but left his side of the street at the scene of the accident and the cars collided over on plaintiff's side of the street.

The two cars collided on South Grand street near the point where it merges into what is known as "Lovers' Lane" ("Lover's Lane" is a continuation of Grand street). The cars were going in opposite directions, Childers going ° south and the other car going north toward Monroe.

Mrs. S. R. Humble was an eye-witness to the collision. Her testimony, in substance, is that she was sitting in an automobile parked at a filling station about twenty-five feet from the scene of the collision and was looking directly at the two cars when they collided; that plaintiff was driving very slowly, near the curb on his right-hand side of the street, his car going south; that defendant's car, going north, whipped around another car going in the same direction, and, failing to get back to its right-hand side of the street, ran into the Childers car on the opposite side of the street.

Jimmie Villanti, who operates a filling station on the said street, testified that the collision occurred about twenty-five feet north of his place; that he was waiting on a customer at the time, heard the crash, looked around, saw Mr. and Mrs.

Childers lying on the curb on the west side of the street, and that the collision took place on the west side, Childers going south.

J. W. Wallace testified that he lived about a block from where the collision took place, was out working his flowers at the time, and says:

"I was looking mighty near right at when it happened."

And when asked what side of the street Childers was on when the collision took place, he said:

"Right-hand side, about as far as it could be."

W. R. Simms, Jr., testified that he talked with Brunson, the driver of defendant's car, immediately after the accident, and that Brunson, in explaining how the accident occurred, said to him, in substance, that some one turned into Jimmie Villanti's filling station and he cut around and could never get his car straight, and his brakes did not work well.

Myatt McClendon testified that he was going south, passed the Childers car a few moments before the collision, met defendant's car going north speeding, heard the crash, looked back and saw Mr. Childers falling out of his car, and that the Childers car was on the righthand side of the street, near the curb, when he passed it, and testified positively that the collision took place on that side.

Both Mr. and Mrs. Childers swear that they were driving slowly, on the right hand side of the street, and that they did not turn to the left, and that the collision took place on their side.

Fred C. Childers, son of plaintiffs, testified that he went to the scene immediately and found his father's car sitting on the levee west of the road; that his car was knocked out of the road, over on the west side, and that the dirt which fell from the cars when they collided was on the west side.

The eye-witnesses to the collision testify that Childers did not leave his side of the street but that defendant's car swerved or turned to the left and that the two cars collided over on the west side.

Against this we have the testimony of two witnesses, Brunson, the driver of defendant's car, and Cupples, a disinterested witness.

Brunson says that his recollection of "the whole matter is, I was going north on Grand street, and before the accident occurred a car or machine passed me going south, and then I saw this Ford coupe turning or attempting to turn, or did turn, as if to go into this blind street. That's the facts as I recall them, and the cars hit. I suppose the impact made me lose control of the machine and I sorter pushed this car up on the bank.

\* \* \* \*

"Well, my foot must have been jarred aloose from the brakes, and the car continued at a low rate of speed down the street."

He denied that he told plaintiff's witness, Simms, that he turned to the left and lost control of his car.

While Mr. Cupples' testimony is relied upon by defendant, it is of about as much value to one side as to the other. He was driving south behind the Childers car and was about three-fourths of a block back. He says that Childers made a long swing to the left and that the collision took place on the east side of the street.

On the other hand, he was asked:

"Did the Dodge car, which was traveling in a northerly direction, or not, turn from the east side of the street?"

And he answered:

"Well, I think it did a little bit. Just right about, just before the time that it hit the Ford."

"Q. Did the Dodge car go beyond the center of the street?

"A. Very little, if any."

Again, he says:

"The Dodge car, the way it looked to me, the car must have been driving at a lively pace, and Mr. Childers was driving very slow; I don't think over twelve miles an hour; and the cars hit."

He further testified that just previous to the collision Childers was on his side of the street.

On the opposite side of the street from where Childers was driving a side or "blind" street leads off to the east and extends out about one block. It is defendant's theory that when Childers got to that point he attempted to cross over and go into this blind street.

Mr. and Mrs. Childers deny that they intended or tried to cross over and enter this side street. Aside from their denials, we discard defendant's theory on that point because no reason is suggested and none can be imagined why they should have wanted to enter this side street. They live south of the city of Monroe on the main public road which is a continuation of the street on which they were traveling. They were on their way home. The side street did not lead toward their home, and, in fact, led nowhere, but stopped only a short distance from the main highway.

On the question of liability, the case is with the plaintiffs. Defendant's driver was grossly negligent and careless, and plaintiffs were guilty of neither.

## ON THE QUANTUM OF DAMAGE

As usual in personal injury cases, this is a difficult problem for courts to solve. The lower court awarded plaintiff, John C. Childers, the sum of $5552.73 and his wife, Mrs. Childers, $3000.00, which amounts, we infer, were intended to cover their expense for loss of time, medical and surgical fees, hospital bills, damage to car, pain and suffering, and permanent injuries.

Counsel for plaintiffs moved in this court to amend the judgments by increasing the amounts, and they cite numerous cases which they say establish precedents by which this court should be guided in the case at bar.

Counsel for defendant, on the contrary, are equally as zealous in their contention that the amounts should be reduced, and they cite a long list of cases in which awards were less for injuries which they assert were as serious as those suffered by these plaintiffs.

Reported cases are of but little assistance to the court in cases of this kind. The amount awarded in each case must depend upon the facts disclosed. The fixing of the amount of damage in a case like this is at best but a bare estimate.

The plaintiff, John C. Childers, was picked up on the side of the street and sent to a sanitarium in an ambulance. Doctor French, who attended him, at once, said that he was suffering very intense pains about the head, was bleeding from the mouth and nose, had lacerations on the right leg and contusions on the left knee and other parts of the body, had contusions on the head, one eye was very much swollen and almost closed, that the patient spat blood for two or three days after going to the sanitarium, that his urine showed blood, that the x-ray showed a fracture of the malar bone, that the patient was very restless in the sanitarium, and to quiet him he used ice bags and sedatives. The patient stayed in the sanitarium about five days, when he was removed to his home.

Doctor French testified further that .blood continued to pass from the patient's ·bladder, and not being a specialist on diseases of the bladder he referred the patient to Doctor McKoin who specializes in diseases of that organ. ·

Doctor McKoin testified that he made a thorough examination of plaintiff's kid- ·neys and bladder, using the cystoscope, by means of which these organs were literally visualized. His examination was made· in October after the accident ·in August, and was witnessed by Doctor Gray and one other physician.

These physicians testify that the patient had an incomplete rupture of the bladder and cystitis with hemorrhage; that the bladder was still infected and inflamed on account of the rupture; that the patient was still passing blood; that he cannot entirely empty his bladder and that there .is always a residue which causes constant pain to some degree; that when urine accumulates in the bladder beyond· six ounces he suffers intense pain.

Doctor McKoin testified that he ex- amined the patient in 1924 and found a .stone in his bladder an inch thick, which was removed by other physicians, and that the patient was cured. He testified fur- ther that the presence of the stone in the bladder did not cause the rupture which he found on his examination in October, 1926, subsequent to the accident. He was of the opinion that the rupture could have been caused by a blow in the region of that organ but could not say positively that it was.

Doctor Gray, who was present at this examination, testified substantially as did Doctor McKoin.

Doctor McKoin testified, as did Mr. Chil- .ders, that for many years prior to 1924 Mr. Childers suffered with bladder trouble but that subsequent to the removal of the stone in 1924 he had no further trouble up to the date of the accident in August, 1926.

Experts are agreed that the patient can- not be cured of his present trouble without an operation, which is dangerous at his age.

Doctor Vaughn, a general practitioner, was of the opinion that the presence of the stone in the patient's bladder caused the rupture found by Doctor McKoin and Doctor Gray; but Doctor McKoin, who located the stone in 1924 said it was not at or near the present rupture and was of the opinion that the stone had no con- nection with the rupture.

Plaintiff continues to pass blood, suffers pain and inconvenience in the bladder, cannot work as he could before the acci- dent. His only relief is an operation, which, for a man of his age, is dangerous.

## AS TO MRS. CHILDERS' INJURIES

She had a laceration in the lower lip, an abrasion of the arm, her left knee was ·contused and swollen, one of her ribs was fractured, she was very nervous and suffered intense pain, complained of pain in the region of the stomach and lower abdomen, had her false teeth broken, which had to be repaired at a cost of $75.00. As a result of the accident her stomach has fallen down two and one-half inches below its normal position and has to be held up in place with straps and bandages. Before this accident she was able to do her housework, such as cook- ing, washing and milking the cows. The testimony shows that she is now totally disabled and needs assistance in sitting down and rising from a chair.

Some of the physicians were of the opinion that the drop down of the stomach

was due to age and natural causes and some thought that the stomach is now in its normal place.

Efforts to reconcile the testimony of the experts would be a hopeless task and we shall not attempt it. The testimony, however, as a whole satisfies us that Mrs. Childers suffered injuries as a result of the collision from which she has not yet and probably will not recover.

These plaintiffs are each over sixty years of age. Their recuperative powers are greatly diminished. It is doubtful if either will ever fully recover from the injuries which they have received.

Our examination of the testimony convinces us that the judgment of the District Court does substantial justice to both the parties and we shall not disturb it.

The judgments are affirmed.